**IT IS ORDERED as set forth below:**



**Date: March 27, 2019**

_Susan D. Barrett_

United States Bankruptcy Judge
Southern District of Georgia

---

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| MARCUS CLAYTON GRIMM, | ) | Number <u>18-11057</u> |
| | ) | |
| Debtor | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| THE PIP-GROUP, LLC, | ) | |
| | ) | |
| Plaintiff | ) | Adversary Proceeding |
| | ) | Number <u>18-01021</u> |
| v. | ) | |
| | ) | |
| MARCUS CLAYTON GRIMM, | ) | |
| | ) | |
| Defendant | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

### ORDER AND OPINION

This Order addresses Marcus Grimm's ("Debtor's") Motion to Dismiss the Amended Complaint ("Complaint") filed by the PIP-Group, LLC ("PIP"). This is a core proceeding pursuant to 28 U.S.C.

AO 72A

(Rev. 8/82)

§157(b)(2)(A) and (I) and the Court has jurisdiction under 28 U.S.C. §1334. For the following reasons, Grimm's motion to dismiss is granted in part, and denied in part.

## FINDINGS OF FACT

The Complaint objects to Grimm's discharge of the debt owed to PIP pursuant to 11 U.S.C. §523(a)(2)(A), §523(a)(4), §523(a)(6)[1] and seeks punitive damages, fees, and expenses pursuant to O.C.G.A. §51-12-5.1 and O.C.G.A. §13-6-11.

The specific factual allegations are as follows:

5. On July 27, 2018 (the "Petition Date"), the Defendant filed a petition under 11 U.S.C. Chapter 7, initiating the instant bankruptcy case. Defendant is a contractor doing business as a sole proprietorship named "Grimm Unlimited."

6. Plaintiff is a company involved in real estate. One of the areas of real estate in which it does business is "fix and flips" where it will purchase properties, repair and renovate them, and then sell them to third-parties.

7. This lawsuit concerns eight (8) properties (the "Properties") in the Savannah and Augusta metropolitan areas. Plaintiff hired Defendant to perform repairs and renovations. Defendant had also completed repair and renovation projects on other properties for Plaintiff without issue. In late 2017 and early 2018, however, issues with Defendant started to arise, as discussed more thoroughly below.

8. To induce Plaintiff into hiring him, Defendant made multiple representations. For instance, prior to his hiring, Defendant represented to Plaintiff and

---

[1] Unless otherwise noted, all sections refer to Title 11 of the United States Code.

AO 72A
(Rev. 8/82)

Plaintiff believed that he was a licensed contractor in the State of Georgia. Defendant also represented, as discussed in more detail below, that he would use monies paid to him by Plaintiff to complete work the Properties, and Plaintiff believed that he would in fact complete such work.

9. Plaintiff relied on the representations made by Defendant in deciding to hire him to complete the work on the Properties.

10. Plaintiff, again relying on these representations, proceeded to then pay Defendant tens of thousands of dollars. Defendant completed some minimal work on the Properties. On other Properties, Defendant received monies from Plaintiff, but did not perform any work whatsoever.

11. Plaintiff then had to hire other contractors to complete the work or repair Defendant's work on the Properties.

12. The Properties that Plaintiff purchased and which are the subject of this lawsuit are as follows: 102 Seminole Street, Savannah, Georgia 31406 ("Seminole Property"), 152 Timberline Drive, Savannah, Georgia 31404 ("Timberline Property"), 302 Chatham Villa Drive, Savannah, Georgia 31408 ("Chatham Villa Property"), 12300 Apache Avenue, Unit 315, Savannah, Georgia 31419 ("Apache Property"), 112 Hampstead Avenue, Savannah, Georgia 31405 ("Hampstead Avenue"), 2622 Whittier Place, Hephzibah, Georgia 30815 ("Whittier Property"), 3908 Creekwood Lane, Augusta, Georgia 30907 ("Creekwood Property"), and 2939 Running Creek Lane, Augusta, Georgia 30907 ("Running Creek Property").

13. On the Seminole Property, Plaintiff hired Defendant to complete certain repairs. Defendant provided a cost of $21,012.00, which included labor, materials, a hotel fee, and food per diem, with a total of $13,445.00 plus ten percent (10%) due prior to commencement of work and the balance of $6,092.00 due at completion of work. Plaintiff paid Defendant $13,684.00. All that Defendant performed was a re-

key and trash-out of the property. Defendant did not perform any repairs and it is unknown what happened to any materials that he purchased for the project on behalf of Plaintiff.

14. On the Timberline Property, Plaintiff hired Defendant to complete certain repairs. A list and cost of those repairs provided by Defendant are attached hereto as Exhibit "A" and incorporated herein by reference. The cost totaled $26,468.00 for labor and materials. Defendant required a deposit for materials, plus ten percent (10%), or $19,024.00 prior to commencement of work and the balance of $7,444.00 due at completion of work. Plaintiff paid Defendant a total of $26,472.00 and Defendant did not complete the repairs as contracted. Plaintiff had to pay an additional $20,000.00 to a third-party contractor to complete the work on this property.

15. On the Chatham Villa Property, Plaintiff hired Defendant to complete multiple repairs and renovations. A list and cost of those repairs and renovations provided by Defendant are attached hereto as Exhibit "B" and incorporated herein by reference. The cost totaled $16,769.00 for labor and materials. Defendant required a deposit of $8,010.00 plus ten percent (10%), or $9,686.00 prior to commencement of work and the balance of $8,759.00 due at completion of work. Plaintiff paid Defendant a total of $18,445.00 and Defendant did not complete the repairs and renovations as contracted. Plaintiff had to pay an additional $6,749.00 to a third-party contractor to complete the work on this property.

16. On the Apache Property, Plaintiff hired Defendant to complete multiple repairs and renovations. A list and cost of those repairs and renovations provided by Defendant are attached hereto as Exhibit "C" and incorporated herein by reference. The cost totaled $9,236.00 for labor and materials. Defendant required a deposit of $5,915.00 plus ten percent (10%), or $6,838.00 prior to commencement of work and the balance of $2,398.00 due at completion of work. Plaintiff paid Defendant a total of $11,638.00 and Defendant did not complete the repairs and renovations as contracted. Plaintiff had to pay an

additional $4,418.00 to a third-party contractor to complete the work on this property. In addition, Plaintiff received a letter from a sub-contractor's attorney indicating that Defendant had not paid one of his sub-contractors and threatening a lawsuit. A true and correct copy of this letter is attached hereto as Exhibit "C-1" and incorporated herein by reference.

17. On the Hampstead Property, Plaintiff hired Defendant to complete repairs and renovations. The cost compiled by Defendant totaled $13,271.00 for labor and materials. Plaintiff paid Defendant a total of $13,271.00 and Defendant did not complete the repairs and renovations as contracted. Plaintiff had to pay an additional $5,711.00 to a third-party contractor to complete the work on this property.

18. On the Whittier Property, Plaintiff hired Defendant to complete repairs and renovations. The cost compiled by Defendant totaled $23,222.00 for labor and materials. Plaintiff paid Defendant a total of $24,222.00 and Defendant did not complete the repairs and renovations as contracted. Plaintiff had to pay an additional $5,000.00 to a third-party contractor to complete work on this property.

19. On the Creekwood Property, Plaintiff hired Defendant to complete repairs and renovations. The cost compiled by Defendant totaled $21,147.00 for labor and materials. Plaintiff paid Defendant a total of $21,786.00 and Defendant did not complete the repairs and renovations as contracted. Plaintiff had to pay an additional $5,000.00 to a third-party contractor to complete work on this property.

20. On the Running Creek Property, Plaintiff hired Defendant to complete repairs and renovations. A cost for those repairs and renovations provided by Defendant is attached hereto as Exhibit "D" and incorporated herein by reference. The cost totaled $18,599.00 for labor and materials. Defendant required a deposit of $8,150.00 plus ten percent (10%), or $10,009.00 due prior to commencement of work and the balance of $8,590.00 due at completion of work. Plaintiff paid Defendant a total of

$17,959.00 and to date no work whatsoever has been completed by Defendant.

21. Additionally, Plaintiff had to pay a total of $4,400.00 to third-party subcontractors that were owed money by Defendant in order to avoid liens being placed on the properties.

22. Plaintiff later discovered that Defendant was not a licensed contractor in the State of Georgia, even though he represented otherwise to Plaintiff.

23. Defendant transferred, converted, and used the funds paid to him by Plaintiff for other purposes unrelated to the Properties, including payment of personal expenditures.

24. On June 4, 2018, Plaintiff filed an action against Defendant in the Superior Court of Columbia County, Georgia (the "State Court Lawsuit"), alleging breach of contract, fraud, conversion, theft by conversion or deception, attorney's fees and punitive damages. A true and correct copy of the State Court Lawsuit is attached to the Original Complaint as Exhibit "A" and incorporated herein by reference.

25. Defendant then filed for relief under Chapter 7 of the Bankruptcy Code.

26. On June 4, 2018, Plaintiff filed an action against Defendant in the Superior Court of Columbia County, Georgia (the "State Court Lawsuit").

27. The Complaint in the State Court Lawsuit discusses in detail the properties purchased by Plaintiff, the hiring of Defendant, the scope of work to be completed by Defendant on the properties, the amounts paid to Defendant, the failures of the Defendant to complete work on the properties, and the amounts expended by Plaintiff in hiring a third-party to complete the work on the properties.

28. Upon information and belief, Defendant has fraudulently transferred, converted, and used the funds paid to him by Plaintiff.

Dckt. No. 22, ¶¶5-28. The Complaint also includes emails in support of PIP's allegations and damages. Dckt. No. 22, Exs. A, B, C, and D.

### CONCLUSIONS OF LAW

In his motion to dismiss, Grimm argues each count in PIP's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)[2] for failure to state a claim for which relief may be granted. In addition, Grimm argues the Complaint fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).[3]

A complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) where it appears that the facts alleged fail to state a plausible claim for relief. <u>Ashcroft v Iqbal</u>, 556 U.S. 662, 678 (2009). "In ruling on a 12(b)(6) motion, the court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." <u>Speaker v. U.S. Dep't. of Health and Human Servs. Ctrs. for Disease Control and Prevention</u>, 623 F.3d 1371, 1379 (11th Cir. 2010). To survive a motion to dismiss for failure to state a claim, heightened

---

[2] Made applicable to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7012.

[3] Made applicable to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7009.

fact pleading of specifics is not required; instead a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S at 678.

Federal Rule of Civil Procedure 9(b) includes a heightened pleading standard for allegations of fraud or mistake, requiring such complaints to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), the complaint must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997)(internal citations omitted). However, to allege fraud or mistake, Rule 9(b) provides "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). And, "Rule 9(b)'s heightened pleading standard is applied less stringently when specific factual

information about the details of the fraud are peculiarly within the defendants' knowledge and control.    Still, the [p]laintiff must support his or her pleading with specific facts supporting a strong inference of fraud." In re Turner, 2017 WL 1214410, at *7 (Bankr. S.D. Ga. 2017)(internal citations and punctuation omitted).

"A court may consider exhibits and attachments to the complaint on a motion to dismiss if the attached document is: (1) central to the plaintiff's claim, and (2) undisputed . . . . mean[ing] that the authenticity of the document is not challenged." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). See also Fed. R. Civ. P. 10(c)("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").[4]  However, "[c]ourts have routinely required that a pleading invoking incorporation by reference must specifically identify which portions of the prior pleading are adopted therein." Muhammad v. Bethel-Muhammad, 2012 WL 1854564, at n.16 (S.D. Ala. May 21, 2012)(internal citations omitted).

With this background, the Court considers each of the Counts in PIP's Complaint:

---

[4]  Made applicable to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7010.

Count I -- §523(a)(2)(A).

Debtors may not discharge a debt "for money, property, services, or an extension, renewal, or refinancing of to the extent it was obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. §523(a)(2)(A). The elements of a §523(a)(2)(A) claim are:

> (1) a false representation with the intent to deceive the creditor;
> (2) the creditor actually relying on the misrepresentation;
> (3) such reliance was justified; and
> (4) the misrepresentation caused a loss to the creditor.

In re Bilzerian, 153 F.3d 1278, 1281 (11th Cir. 1998). "A false representation includes a misrepresentation of intent. A breach of a promise is not necessarily a false representation if intervening events cause the debtor to change his course of action; the debtor must have intended not to perform at the time the promise was made." In re Zipperer, 447 B.R. 908, 914 (Bankr. S.D. Ga. 2011)(citing In re Foster, 2010 WL 2025784, at *2 (Bankr. N.D. Ga. Feb. 26, 2010)). "A debtor is unlikely to admit that he made a promise without the intent to perform or that he made a false statement or omission with the intent to deceive the creditor. Therefore, the court is permitted to infer such fraudulent intent

from the facts and circumstances of the case." In re Callaway, 2006 Bankr. LEXIS 3575, at *61 (Bankr. N.D. Ga. Nov. 28, 2006).

In this case, the allegations set forth in ¶¶7-11 and 13-23 of the Complaint, taken as true, plausibly establish a §523(a)(2)(A) claim sufficient to survive a motion to dismiss. Dckt. No. 22, supra. The Complaint alleges Grimm falsely represented he was a licensed contractor with the intention of deceiving PIP into hiring and paying him. The Complaint further avers Grimm represented he would use the monies paid to him to complete repair work. PIP relied upon these representations, and such reliance was justified as pled. "A misrepresentation as to whether a debtor has a [contractor's license] goes to the very essence of the agreement, i.e., the reliance by the contracting party that the debtor has the requisite knowledge . . . to properly complete the work." In re Creta, 271 B.R. 214, 220 (B.A.P. 1st Cir. 2002); see also In re Hardigan, 2016 Bankr. LEXIS 975, at *17 (Bankr. S.D Ga. Mar. 28, 2016)(concluding the concealment of a material fact can be the basis of a false impression which creates a misrepresentation under §523(a)(2)(A)). The Complaint acknowledges PIP previously had employed Grimm without issues, arguably strengthening PIP's justifiable reliance. Finally, the Complaint alleges PIP sustained a financial loss as a result of the purported misrepresentations. See Dckt. No. 22, ¶¶ 10-11, 13-23,

*supra.*

For these reasons the Court finds the Complaint contains sufficient factual allegations which accepted as true to state a claim under §523(a)(2)(A).

## Count II -- §523(a)(4).

Count II of the Complaint alleges the debt owed to PIP is nondischargeable pursuant to §523(a)(4). Section 523(a)(4) provides a debt is nondischargeable if such debt is "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. §523(a)(4).[5] For the following reasons, the Court finds the Complaint fails to state an embezzlement claim, but states a larceny claim sufficient to survive the motion to dismiss:

### Embezzlement.

Embezzlement is defined as:

the fraudulent appropriation of property by a person to whom it has been entrusted or into whose hands it has lawfully come. To establish embezzlement, the plaintiff must show (1) property owned by another which is rightfully in the possession of the debtor; (2) the debtor appropriates the property for personal use; (3) the appropriation occurred with fraudulent intent

---

[5] To support the §523(a)(4) allegations, PIP cites to O.C.G.A. §16-8-15, which is a provision of the Georgia Criminal Code regarding theft by conversion of payments for property improvements. However, because exceptions to dischargeability concern federal law, "state statutes which presume or imply fraud cannot be employed to establish fraudulent intent." In re Schultz, 46 B.R. 880, 892 (Bankr. D. Nev. 1985). As a result, the Court considers these allegations pursuant to §523(a)(4).

AO 72A
(Rev. 8/82)

12

or by deceit.

In re Pervis, 512 B.R. 348, 366 (Bankr. N.D. Ga. 2014)(internal citations omitted). A person cannot embezzle his own money. In re Wiles, 166 B.R. 975, 980 (Bankr. M.D. Fla. 1994).

While Grimm may have misrepresented that he was a licensed contractor and that he intended to perform work and pay for materials and labor, PIP never entrusted its money to Grimm. Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted or into whose hands it has lawfully come. See In re Cloninger, 548 B.R. 839, 860 (Bankr. N.D. Ga. Mar. 18, 2016)(defining embezzlement as requiring the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come"); see also Schultz, 46 B.R. 880 at 889-90 ("[W]hen the contractor receives payment, ownership of the funds passes to him. One cannot embezzle, steal, or convert one's own property."); In re Kalmar, 18 B.R. 343, 345 (Bankr. E.D. Pa. 1982)("Ownership of the funds passed to the debtor when the funds were transferred.").

The first element of embezzlement requires PIP to plead "property owned by another which is rightfully in the possession of the debtor." Pervis, 512 B.R. at 366. PIP's complaint states that Grimm fraudulently induced it to hire and pay Grimm based upon Grimm's misrepresentation as to licensure and his intentions

regarding the work. This does not meet the first element for embezzlement, because it is not stating that PIP entrusted the money or that Grimm was rightfully in possession of the money.

For these reasons, the Complaint fails to state a claim for embezzlement under §523(a)(4).

### Larceny.

"To determine whether a debt is nondischargeable for larceny under §523(a)(4) courts have applied the federal common law definition under which the term larceny is defined as 'the fraudulent taking and carrying away of property of another with intent to convert such property to the taker's use without the consent of the owner.'" In re Dennis, 444 B.R. 210, 217 (Bankr. N.D. Ala. 2011)(internal punctuation omitted); see also In re Patterson, 2013 WL 3376780, at *3 (Bankr. N.D. Ala. June 7, 2013).

At this stage in the proceedings, and without reaching the merits, the Court concludes the Complaint states a §523(a)(4) larceny claim plausible on its face sufficient to survive PIP's Rule 12(b)(6) motion to dismiss. First, the allegations in ¶¶8, 10, 11, 13-21, and 23 of Complaint, taken as true, allege Grimm fraudulently took and carried away property of PIP. Dckt. No. 22, supra. Together, these allegations give an account of how PIP paid Grimm for incomplete work and missing materials and how Grimm made misrepresentations and used the monies paid to him for other

purposes, allowing the Court, at this stage, to draw a reasonable inference that Grimm fraudulently took and carried away money belonging to PIP.

PIP also has sufficiently pled allegations that Grimm fraudulently took and carried away PIP's property with the intent to convert the money for his own use. Dckt. No. 22, ¶¶13, 20, 21, 23, supra. A reasonable inference may be drawn at this stage that, if the allegations are true, Grimm converted funds for his own use without the consent of PIP. Thus, the Complaint is sufficient to survive a 12(b)(6) motion to dismiss as to larceny under §523(a)(4).

## Count III -- §523(a)(6).

A debt "for a willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from discharge pursuant to §523(a)(6). 11 U.S.C. §523(a)(6).

> A debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury. In re Jennings, 670 F.3d 1329, 1334 (11th Cir. 2012) (quoting In re Walker, 48 F.3d 1161, 1165 (11th Cir.1995)) (alteration omitted); see Kawaauhau v. Geiger, 523 U.S. 57, 61-62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (holding that §523(a)(6) requires the actor to intend the injury, not just the act that leads to the injury).

In re Kane, 755 F.3d 1285, 1293 (11th Cir. 2014). Such injury is malicious when the intentional act is "wrongful and without just cause or excessive, even in the absence of personal hatred, spite

or ill-will." Id. at 1294 (citing Jennings, 670 F.3d at 1334 (internal quotation marks and citation omitted)). "Willful and malicious injury includes willful and malicious conversion." In re May, 518 B.R. 99, 124 (Bankr. S.D. Ga. 2014)(internal citations omitted). Willful and malicious conversion is the "unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's rights." In re Wolfson, 56 F.3d 52, 54 (11th Cir. 1995). "The injury must invade the creditor's legal rights . . . 'in the technical sense, not simply harm to a person.'" In re Musilli, 379 F. App'x 494, 498 (6th Cir. 2010).

Therefore, in order to avoid a Rule 12(b)(6) dismissal for failure to state a claim under §523(a)(6), PIP must plead facts, which taken as true, allow the Court to draw a reasonable inference that: 1) there was an injury to PIP or its property; 2) the injury was inflicted by Grimm; and 3) Grimm inflicted the injury willfully and maliciously. 11 U.S.C. §523(a)(6).

First, ¶¶ 10-11, 13-21 of the Complaint plausibly establish Grimm injured PIP or the property of PIP. Dckt. No. 22, supra. These allegations set forth how PIP and its property were injured by Grimm.

Second, the Complaint alleges Grimm inflicted the injuries willfully and maliciously. See Dckt. No. 22, ¶¶8, 10, 13-23, supra. The Complaint alleges Grimm intentionally lied about

his license status, his intent to pay others, and his intent to complete the work. The reasonable inference that can be drawn from the allegations is that Grimm's intentional acts were done with the purpose to cause injury to PIP or were substantially certain to cause injury to PIP. See Jennings, 670 F.3d at 1334. Therefore, the Complaint properly states a claim for relief under §523(a)(6).

**Counts IV and V -- State Law Claims.**

Finally, the Complaint also includes two claims based on state law: punitive damages pursuant to O.C.G.A. §51-12-5.1 and attorney's fees pursuant to O.C.G.A. §13-6-11. Grimm argues since PIP's §523 claims "must fail . . . [these state law claims] must also be dismissed for failure to state a claim for relief." Dckt. No. 23 at 19. Since the Court has concluded many of these claims survive the motion to dismiss, Grimm's grounds for dismissal of these claims is denied.

It is therefore ordered that Grimm's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

**[END OF DOCUMENT]**